FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 18, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

CALEB H.,[1]

                    Plaintiff,

        v.

ANDREW M. SAUL, the Commissioner
of Social Security,

                    Defendant.

No.    4:20-CV-5006-EFS

**ORDER DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Caleb H. appeals the denial of benefits by the Administrative Law Judge (ALJ). He alleges the ALJ erred by 1) failing to consider the U.S. Department of Veteran Affairs' finding that Plaintiff was disabled, 2) discounting Plaintiff's symptom reports, 3) failing to properly consider lay

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to him by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 13 & 15.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

statements, 4) improperly determining that the impairments did not meet or equal Listing 1.02A, 1.04, 1.06, and 11.14, and 5) improperly determining step five based on an incomplete hypothetical question. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 13, and grants the Commissioner's Motion for Summary Judgment, ECF No. 15.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the

---

[3] 20 C.F.R. § 404.1520(a).

[4] *Id.* § 404.1520(a)(4)(i).

[5] *Id.* § 404.1520(b).

[6] *Id.* § 404.1520(b).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

claimant's physical or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

---

[7] 20 C.F.R. § 404.1520(a)(4)(ii).

[8] *Id.* § 404.1520(c).

[9] *Id.*

[10] *Id.* § 404.1520(a)(4)(iii).

[11] *Id.* § 404.1520(d).

[12] *Id.* § 404.1520(a)(4)(iv).

[13] *Id.*

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed a Title II application, alleging an amended disability onset date of February 28, 2018.[18] His claim was denied initially and upon reconsideration.[19] A video administrative hearing was held before Administrative Law Judge Stewart Stallings.[20]

---

[14] 20 C.F.R. § 404.1520(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. § 404.1520(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 59.

[19] AR 62-74 & 76-91.

[20] AR 37-60.

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Plaintiff met the insured status requirements through December 31, 2023;

- Step one: Plaintiff had not engaged in substantial gainful activity since February 28, 2018, the alleged onset date;

- Step two: Plaintiff had the following medically determinable severe impairments: bilateral hip degenerative joint disease, right foot injury/fracture status-post surgery (2013), obesity, post-traumatic stress disorder (PTSD), and anxiety;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform sedentary work with the following limitations:

  He requires a sit/stand option every 30 minutes. He is limited to no operation of foot controls with the right lower extremity. He can never climb ladders/ropes/scaffolds and only occasionally climb ramps/stairs, and occasionally balance, stooping, kneeling, crouching and crawling. He must avoid work around hazards such as unprotected heights and dangerous moving machinery. He is limited to no more than frequent contact with the public and only occasional interaction with co-workers and supervisors.

- Step four: Plaintiff was not capable of performing past relevant work; and

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as telemarketer, agricultural produce sorter, and final assembler.[21]

When assessing the medical-opinion evidence, the ALJ could not "defer or give any specific evidentiary weight, including controlling weight, to any prior . . . medical opinion(s)."[22]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23] Likewise, the ALJ discounted the lay statements from Plaintiff's wife.[24]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[25] Plaintiff timely appealed to this Court.

---

[21] AR 17-31.

[22] AR 27.

[23] AR 23-28.

[24] AR 29.

[25] AR 1-3.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[26] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[27] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[28] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[29] The Court considers the entire record as a whole.[30]

---

[26] 42 U.S.C. § 405(g).

[27] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[28] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[29] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[30] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

1

2

Further, the Court may not reverse an ALJ decision due to a harmless error.[31] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[32] The party appealing the ALJ's decision generally bears the burden of establishing harm.[33]

3

4

## IV.    Analysis

5

6

### A.    VA's disability determination

7

8

Plaintiff argues the ALJ improperly rejected the VA's disability determination that he was 80% disabled.[34] He states that the VA's finding was supported by "several hundred pages of medical records."[35] Defendant argues that the ALJ properly considered the medical evidence from the VA under the new regulations.[36]

9

10

11

12

The ALJ correctly described the requirements of the new regulations, which apply to applications filed on or after March 27, 2017. As the ALJ noted, the regulations do not require ALJs to "provide any analysis in [their] determination or decision about a decision made by another governmental

13

14

15

16

17

---

18

[31] *Molina*, 674 F.3d at 1111.

19

[32] *Id.* at 1115 (quotation and citation omitted).

20

[33] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

21

[34] ECF No. 13 at 10-12.

22

[35] *Id.* at 11.

23

[36] ECF No. 15 at 16.

agency or a nongovernment entity about whether [claimants] are disabled, blind, employable, or entitled to any benefits."[37] Further, an ALJ is not required to assign "any specific evidentiary weight, including controlling weight, to . . . prior administrative medical finding(s)."[38] Instead, the ALJ will consider "all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [the ALJ] received as evidence" for the disability claim."[39]

Although Plaintiff acknowledges that the new regulations apply to his claim, Plaintiff argues that "there is no indication that [the ALJ] considered all of the supporting evidence underlying the VA's decision."[40] Plaintiff relies on *McCartey v. Massanari*, in which the Ninth Circuit ordered remand for payment of benefits where the VA's 80% disability determination was supported by several hundred pages of medical records.[41] As in *McCartey*, Plaintiff contends that when the evidence underlying the VA's decision in his case is properly considered, particularly the evidence related to Plaintiff's

---

[37] 20 C.F.R. § 404.1504.

[38] 20 C.F.R. § 404.1520c(a).

[39] 20 C.F.R. § 404.1504.

[40] ECF No. 13 at 11.

[41] 298 F.3d 1072, 1076 (9th Cir. 2002).

1

2

PTSD symptoms, the ALJ would find that he is unable to maintain regular, continuous employment.[42]

3

4

5

6

7

8

9

10

11

12

13

*McCartey* was decided <u>before</u> the new regulations took effect, but Plaintiff argues that *McCartey* is still "established law in the Ninth Circuit;" therefore, the "ALJ must give great weight to a VA determination of disability."[43] *McCartey* was rendered before the new regulation; thus, as other district courts have decided, it is unpersuasive here.[44] As to the medical records underlying the VA's opinion here, the record contains many treatment records from Memorial VA Center, and other providers, that span from 2015 to 2018.[45] The ALJ considered these records and discussed them in his decision.[46] On this record, the ALJ properly considered the underlying evidence supporting Plaintiff's VA disability rating.

14

15

16

17

18

19

20

21

22

23

---

[42] ECF No. 13 at 11-12.

[43] *Id.* at 11.

[44] *See, e.g., Edward L.C. v. Comm'r of Soc. Sec.,* No. C19-5208-MLP, 2019 WL 6789813, at *2 (W.D. Wash. Dec. 12, 2019) ("The Court declines to adopt Plaintiff's interpretation and instead finds the ALJ is no longer required to assign weight to VA disability determinations."); *see also Kathleen H. v. Saul,* No. 3:19-cv-00189-AA, 2020 WL 5017760, at *5 (D. Or. Aug. 25, 2020).

[45] AR 306-834.

[46] AR 22, 25-28, & 29.

**B.      Step Three (Listings): Plaintiff fails to establish error.**

Plaintiff contends the ALJ erred by finding that Plaintiff's impairments did not meet Listing 12.15[47] for PTSD and by not considering Listing 11.14.[48] Plaintiff also asserts he meets or medically equals Listings 1.02A, 1.04, and 1.06, and 11.14, singly or in combination, due to marked difficulties in physical functioning and the inability to ambulate effectively.[49]

At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment.[50] "To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim."[51] "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment."[52] "If a claimant suffers from multiple impairments and none of

---

[47] The Court notes Plaintiff does not explain how the ALJ erred by finding Plaintiff's impairments did not meet Listing 12.15.

[48] ECF No. 13 at 12.

[49] *Id.* at 12-13.

[50] 20 C.F.R. § 416.920(a)(4)(iii).

[51] *Tackett*, 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 416.925(d).

[52] *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).

them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment."[53] However, "'[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three.'"[54] The claimant bears the burden of establishing his impairment (or combination of impairments) meets or equals the criteria of a listed impairments.[55]

Plaintiff contends the ALJ erred in not finding he meets or equals a listing because Plaintiff has marked limitations in physical functioning and the inability to ambulate. Section 11.00 defines marked limitations and physical functioning as:

> For this criterion, a marked limitation means that, due to the signs and symptoms of your neurological disorder, you are seriously limited in the ability to independently initiate, sustain, and complete work-related physical activities (see 11.00G3). You may have a marked limitation in your physical functioning when your neurological disease process causes persistent or intermittent symptoms that affect your abilities to independently initiate, sustain, and complete work-related activities, such as standing, balancing, walking, using both upper extremities for fine and gross movements, or results in limitations in using one upper and one lower extremity. The persistent and intermittent symptoms must result in a serious limitation in your ability to do a task or activity on a sustained basis. We do not define

---

[53] *Tackett*, 180 F.3d at 1099.

[54] *Id*. at 1100 (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).

[55] *Burch*, 400 F.3d at 683.

1
2
3
4
5

"marked" by a specific number of different physical activities or tasks that demonstrate your ability, but by the overall effects of your neurological symptoms on your ability to perform such physical activities on a consistent and sustained basis. You need not be totally precluded from performing a function or activity to have a marked limitation, as long as the degree of limitation seriously limits your ability to independently initiate, sustain, and complete work-related physical activities.[56]

6

Listing 1.00B2b defines the ability to ambulate effectively as:

7
8
9
10
11

(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. ...

12
13
14
15
16
17
18
19

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.[57]

20
21

---

[56] 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 11.00G.

22

[57] 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.00B2b.

23

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

        The Court finds the ALJ's articulated reasoning and analysis sufficiently

specific (in light of the entire ALJ decision) and supported by substantial evidence.

The ALJ reviewed the record and found that Plaintiff was able to ambulate without

an assistive device, attend to his personal care/hygiene, fix his own meals, complete

household chores, shop in stores, and drive a vehicle.[58] The ALJ also highlighted

Plaintiff's neuromuscular examinations and found no significant limiting

neurologic deficits (e.g., typically normal/full motor strength, intact sensation and

symmetric reflexes; no atrophy; ambulates without assistive device).[59] The

evidence Plaintiff identifies does not undermine the ALJ's finding. When

considering the record as a whole, the Plaintiff has not met his burden of

demonstrating that his impairments met or equaled the criteria of Listings 1.02A.

1.04, 1.06, and 11.14.

------

[58] AR 20.

[59] AR 20 (citing AR 414 ("Cranial nerves II-XII grossly intact. Strength equal

and adequate bilaterally. Sensation to light touch intact. Gait normal."); AR

612-13 (presented with antalgic gait, no assistive device, moderate degree of

tenderness on palpation of the bilateral forefoot, as well as both hips,

diminished ROM of both hips, able to squat and tandem walk, unable to hop,

no foot drop, straight leg raise test negative bilaterally in seated and supine

position, motor function 5/5 in upper and lower extremities); AR 825-26; AR

833 (moderate finding after EMG and nerve conduction studies).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

**C.    Plaintiff's Symptom Reports: Plaintiff fails to establish error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting his symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[60] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[61] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms inconsistent with the objective medical evidence, treatment, and daily activities.[62]

First, as to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective medical evidence, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[63] However, objective medical evidence is a relevant factor in

---

[60] *Molina*, 674 F.3d at 1112.

[61] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[62] AR 23-26.

[63] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

1
2
3
4
5
6
7
8
9

considering the severity of the reported symptoms. [64] Here, the ALJ found the

medical evidence and record as a whole did not support a more restrictive RFC.[65]

As to Plaintiff's physical impairments, the ALJ highlighted that, while the record

indicates chronic hip and residual right foot pain with some decreased range of

motion, diminished strength and altered/antalgic gait at times, Plaintiff's

neuromuscular examinations have otherwise demonstrated no focal neurologic

deficits (e.g., typically normal/full motor strength, intact sensation, normal

---

10
11
12
13
14
15
16
17
18
19
20
21
22
23

[64] *Id.* "Objective medical evidence" means signs, laboratory findings, or both.

20 C.F.R. §§ 404.1502(f), 416.902(k). In turn, "signs" is defined as:

> one or more anatomical, physiological, or psychological
> abnormalities that can be observed, apart from [the claimant's]
> statements (symptoms). Signs must be shown by medically
> clinical diagnostic techniques. Psychiatric signs are medically
> demonstrable phenomena that indicate specific psychological
> abnormalities, e.g., abnormalities of behavior, mood, thought,
> memory, orientation, development, or perception, and must also
> be shown by observable facts that can be medically described
> and evaluated.

*Id.* §§ 404.1502(g), 416.902(l). Evidence obtained from the "application of a

medically acceptable clinical diagnostic technique, such as evidence of

reduced joint motion, muscle spasm, sensory deficits, or motor disruption" is

considered objective medical evidence. 3 Soc. Sec. Law & Prac. § 36:26,

Consideration of objective medical evidence (2019).

[65] AR 23.

reflexes, normal coordination and ability to ambulate without assistive device).[66] As to Plaintiff's mental health, the ALJ noted that while the record documents diagnoses of PTSD, anxiety disorder, and a history of alcohol abuse (remission since December 2015), the record does not support Plaintiff's allegations of debilitating mental health issues.[67] The ALJ also found that Plaintiff's psychiatric screenings with treating providers and psychological examiners indicated some reported ongoing PTSD-related, anxiety/panic, and anger symptomatology at times, but otherwise within normal limits (e.g., alert, fully oriented, no acute distress; cooperative, normal speech; consistently euthymic mood/full affect; intact memory, normal thought content and perception; good insight and judgment).[68] This was a relevant factor for the ALJ to consider.

Second, the ALJ found that the conservative treatment recommended by Plaintiff's treating providers undermined the severity of his symptom complaints.[69] Evidence of "conservative treatment" is sufficient to discount a claimant's

---

[66] AR 24 (citing AR 414, 612-13, 826-27, & 633).

[67] AR 25.

[68] AR 25 (citing AR 374-75, 391, 399-400, 404, 414, 423-24, 426, 463, 500, 533, 559, 572, 580, 586, 672, 675, 681, 814-15, & 832).

[69] AR 24-26.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

testimony regarding the severity of an impairment.[70] Here, the ALJ noted that Plaintiff's treatment primarily consisted of pain and psychiatric medications, physical therapy/stretching, acupuncture, and regular mental health therapy.[71] Furthermore, the ALJ noted that often times, Plaintiff reported progress with his course of treatment. "Impairments that can be controlled effectively with medication are not disabling."[72] The ALJ described medical evidence where Plaintiff's reported mental impairments improved with medication, noting Plaintiff's depression and anxiety symptoms and nightmares were well controlled

---

[70] *Parra v. Astrue*, 481 F,3d 742 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-counter pain medication is evidence of conservative treatment sufficient to discount a claimant's testimony regarding the severity of an impairment)); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding that the ALJ permissible inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorable to conservative treatment including physical therapy and the use of anti-inflammatory medication, and transcutaneous electrical nerve stimulation unit, and lumbosacral corset").

[71] AR 24.

[72] *Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2005).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 18

and stable.[73] As to Plaintiff's physical impairments, the ALJ noted Plaintiff was attending physical therapy and yoga three times a week and felt good.[74]

Plaintiff contends the "ALJ improperly overlooked, mischaracterized, and ignored treatment records," which he claims demonstrates the severity of his symptoms waxed and waned.[75] An ALJ must consider all of the relevant evidence in the record and may not point only those portions of the record that bolster his findings.[76] The ALJ's decision does not reflect a selective reliance upon the record, while ignoring other records. The ALJ acknowledged the record showed reports of

---

[73] AR 25 (citing AR 392 ("At the last visit the Pt was put on Cymbalta and today he tells me, 'the darkness isn't so dark on the Cymbalta. I like it!' depression and anxiety are generally well controlled and moods stable.") (original capitalized all letters)); AR 26 (citing AR 391 ("[Plaintiff] is doing well on his meds and wants no changes." (original capitalized all letters)); AR 764 ("'Everything is flowing well.' States his depression and anxiety are well controlled and his moods are stable. Nightmares are well controlled. He likes his med plan and wants no changes." (original capitalized all letters))).

[74] AR 25 & 762.

[75] ECF No. 13 at 17.

[76] See, e.g., Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

PTSD-related anxiety/panic and anger/rage symptomology at times, but determined they were relatively within normal limits and incorporated social functions in the RFC.[77] The ALJ reasonably interpreted the evidence as a whole and permissibly discounted Plaintiff's subject complaints based on generally conservative treatment and effective control with medication.

Lastly, the ALJ also discounted Plaintiff's symptom reports because they were inconsistent with his high functioning activities of daily living.[78] If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.[79] The ALJ highlighted that Plaintiff lives with his wife and two children, manages his personal care and medication, fixes his own meals, performs household chores, cares for pets, grocery shops, and completes yard work.[80] Plaintiff argues that it's not "that his breadth of activities are limited by his mental health symptoms" but "maintains that he is unable to work on a regular, continuous basis due to . . . interruptions from psychological symptoms" and "severe pain symptoms interfering

---

[77] AR 25.

[78] AR 24.

[79] *Molina*, 674 F.3d at 1113.

[80] AR 26.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 20

with focus and concentration."[81] However, Plaintiff was able to go on vacation to Mexico with 17 family members and scuba dive twice after going through a certification process in a training pool, attend a concert, attend bible study weekly, swim four time a week for weight loss, and planned to get a certificate to be a caretake for his brother.[82] On this record, the ALJ reasonably concluded that Plaintiff's activities indicated Plaintiff could perform a limited range of sedentary exertional work with limited social interaction. This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints.

**D.    Lay Witness: Plaintiff fails to establish consequential error.**

Plaintiff also challenges the ALJ's rejection of the lay witness testimony of his wife. For claims filed on or after March 27, 2017, new regulations provide that the ALJs are "not required to articulate how [they] considered evidence from nonmedical sources."[83] Consequently, there is an argument the ALJ is no longer required to provide reasons that are germane to reject lay witness testimony.[84]

---

[81] ECF No. 13 at 19.

[82] AR 26-27.

[83] 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

[84] *See Wendy J.C. v. Saul*, No. 3:19-cv-01434-AC, 2020 WL 6161402, at n.9 (D. Or. October 21, 2020) ("The new regulations provide the ALJ is 'not required to articulate how [they] considered evidence from nonmedical sources ....' 20

However, some courts have found that § 404.1520c(d) "does not eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his reasons for discounting those statements."[85]

Neither party addressed this change in law, and it appears the ALJ assumes that he does not have to provide articulation about lay witness testimony.[86] Without deciding whether the ALJ is to articulate his consideration of lay witness statements and provide a reason for discounting those statements, any error by the ALJ in failing to consider Plaintiff's wife's testimony is harmless.

Here, Plaintiffs wife completed a third-party function report in August 2018 and October 2018.[87] "[I]n accordance with 20 C.F.R. 404.1520b(c) and 416.920b(c), the [ALJ did] not provide articulation about [the August 2018 report], which [he

---

C.F.R. §§ 404.1520c(d) (2019), 416.920c(d). As such, the ALJ is no longer required to provide reasons germane to lay witnesses to reject their testimony."); *Kyra H. Comm'r of the Soc. Sec. Admin.*, No. 6:18-cv-01979-AC, 2020 WL 2216912, at n.8 (D. Or. May 7, 2020) (same).

[85] *Joseph M.R. v. Comm'r of Soc. Sec.*, 3:18-cv-01779-BR, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019).

[86] AR 29 ("[I]n accordance with 20 CFR 404.1520b(c) and 416.920b(c), the undersigned does not provide articulation about this evidence, which is inherently neither valuable nor persuasive.").

[87] AR 205-12 & 245-52.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

found was] inherently neither valuable nor persuasive."[88] Plaintiff argues the ALJ erred in "ignore[ing] or summarily reject[ing]" the lay witness' August 2018 report and "completely overlook[ing]" the October 2018 report.[89] Where the ALJ gives clear and convincing reasons to reject a claimant's testimony, and where a lay witness' testimony is similar to the claimant's subjective complaints, the reasons given to reject the claimant's testimony are also germane reasons to reject the lay witness testimony.[90]

On August 9, 2018, Plaintiff's wife completed a third-party function report.[91] Plaintiff's wife reported Plaintiff's daily activities include grooming, making meals, taking care of his children, and night terrors (1-2 nights per week). Plaintiff's wife also reported Plaintiff's foot/hip pain prevents him from standing, walking, or completing physical activities for more than 10-15 minutes at a time. Plaintiff's wife also reported Plaintiff was able to complete yard work, laundry, and cleaning with direct instruction and reminders, and hunt every Saturday during the season. Plaintiff's wife also reported Plaintiff was able to attend bible study and dinner

---

[88] AR 29.

[89] ECF No. 13 at 16.

[90] *See Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 694 (9th Cir. 2009) (ALJ may reject lay testimony that essentially reproduces the claimant's discredited testimony).

[91] AR 205-12.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 23

with extended family and visit the gym and library with his children. Plaintiff's wife also reported that Plaintiff was unable to handle groups greater than five people. On October 1, 2018, Plaintiff's wife completed a second third-party function report with similar reported daily activities and limitations.[92]

Plaintiff's wife's testimony was similar to Plaintiff's own subjective complaints.[93] Because, as discussed above, the ALJ gave clear and convincing reasons supported by substantial evidence in the record in discounting Plaintiff's own subjective complaints and Plaintiff's wife's testimony repeated Plaintiff's complaints, any error by the ALJ in failing to consider Plaintiff's wife's testimony is harmless.[94]

Plaintiff fails to establish consequential error by the ALJ in this regard.

## E.    Step Five: Plaintiff fails to establish error.

Plaintiff argues that the ALJ's hypothetical failed to consider the limitations set forth by his providers. However, this argument merely restates Plaintiff's earlier allegations of error, which are not supported by the record. Accordingly, the

─────────────────────

[92] AR 245-52.

[93] AR 41-49 & 213-21; *compare with* AR 205-12 & 245-52.

[94] *Valentine*, 574 F.3d at 694 (noting that the ALJ's rejection of the claimant's spouse's lay testimony because she was an interested party who never saw the claimant at work was harmless since the lay testimony repeated the claimant's allegations, and the ALJ found that the claimant's allegations were not credible).

ALJ's hypothetical properly accounted for the limitations supported by the record.[95]

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 18th  day of November 2020.

_____
s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge

---

[95] *See Magallanes*, 881 F.2d at 756–57 (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).